MICHAEL BAILEY
United States Attorney
District of Arizona

MONA SAHAF
DC State Bar No. 497854
Email: mona.sahaf@usdoj.gov
Trial Attorney
Human Rights and Special Prosecutions Section
U.S. Department of Justice
1301 New York Ave., NW
Washington, DC 20005
Telephone: 202-262-6511

PETER SEXTON
Arizona State Bar No. 011089
Email: peter.sexton@usdoj.gov
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-19-00200-PHX-DLR |
| Plaintiff, | **GOVERNMENT'S CONSOLIDATED PLEADING: ADDRESSING ITS SENTENCING RECOMMENDATION AND REQUEST FOR VARIANCE** |
| vs. | |
| Waleed Sarrar | |
| Defendant. | |

**1.   Overview**

This is a straightforward case. Defendant Sarrar conspired to sell customers inauthentic Native American jewelry that was manufactured overseas. While the financial harm that he caused is difficult to quantify, his actions defrauded customers and contributed to the continued degradation of the market for artisanal Native American jewelry and crafts. As a reliable purchaser of inauthentic jewelry, which he misrepresented to customers for many years, Defendant Sarrar played an important role in this fraudulent enterprise.

The government does not seek incarceration. Defendant Sarrar resolved this matter expeditiously, was debriefed by the government, and has no prior convictions. Mostly, however, it is the Covid-19 situation that warrants a variance for him. Non-incarceration alternatives would be far more prudent with all that is going on in the world and his life.

**2.    Sentencing Calculation**

Probation calculated the Defendant's BOL level as seven (¶ 132). Because the loss attributed to Defendant Sarrar through the scheme was less than $40,000, four levels were added (¶ 133). Additionally, Probation added two levels because the offense involved more than ten victims (¶ 134), and two levels because a substantial portion of the offense occurred overseas and the offense involved sophisticated means in terms of the jewelry production (¶ 135). The Defendant was considered an average participant in the scheme, so no adjustment was made for his role in the offense (¶¶ 122, 137). Ultimately, Probation determined that his Adjusted Offense Level was 15 (¶ 139), and his Total Offense Level was 13 (¶ 142). The government agrees with Probation's calculations.

**3.    Sentencing Factors (18 U.S.C. § 3553(a))**

The sentencing factors articulated in § 3553(a) support the scope of the government's downward variance and recommended sentence.

**a.    Offense Conduct**

The PSR describes the offense conduct in great detail (¶¶ 10-122). The conduct was extensive. It is hard to measure how this conduct affected Native American designers, but there is a great deal of anecdotal information to suggest it has greatly eroded the livelihood of many Indian artisans. Notably, in 2018, Defendant Sarrar worked with Co-Defendant Wesley and other co-defendants to have a genuine Native American piece, created by Native American jewelry artist M.P., replicated in the Philippines. Sarrar then displayed the real and fake Native pieces together in a display case at his store (¶¶ 71, 75-85, 87-88, 90, 93).

### b. Defendant's History and Characteristics

Defendant Sarrar has no criminal history (¶¶ 143-149). Overall, his history and characteristics are not troublesome, and apart from his conduct in this case, he has been law-abiding and productive. He has also complied with his pretrial release conditions.

### c. Cooperation Efforts

Defendant Sarrar entered into a cooperation plea agreement, and met with the government early in this prosecution. During a proffer session with the government, he was prepared, candid, and provided useful information. While his efforts fell short of providing substantial assistance, his timely cooperation with the government serves as another basis for our request for a downward variance.

### d. Nature of the Offense, Promoting Respect, Providing Just Punishment

The fraud in this particular case is not as serious as some fraudulent schemes. Individual consumers got a counterfeit item, but mostly are unaware that they purchased a counterfeit item of jewelry. These were well-made counterfeits, and defendants used high quality components in the manufacturing process. Consumers were still swindled, but not as significantly as often occurs in other fraudulent enterprises.

The loss falls mostly on Indian artisans and certain retail outfits, who lost business to the counterfeiters. How much was diverted from legitimate crafters is hard to measure, but it certainly is not insignificant. Overall, this type of fraud mostly spread minor damage to many, and more significant, immeasurable harm to only a few. That said, experts agree that the market for artisanal Native-American goods has suffered due to the influx of cheaper knock-offs imported from abroad.[1]

---

[1] *See* Maraya Cornell, *Biggest Native American Art Conspiracy Revealed*, NATIONAL GEOGRAPHIC, March 15, 2018 available at https://www.nationalgeographic.com/news/2018/03/native-american-indian-art-fake-forgery-hopi-zuni0/. "For as long as the Zunis and other indigenous artisans have sold their crafts, they've been undercut by fakes—nonnatives posing as Indians to sell more of their work, factory made goods sold as handmade. But today's fakes include a virtual torrent of knockoffs cheaply manufactured overseas and masquerading as genuine Native made . . . ."

### b. Defendant's History and Characteristics

Defendant Sarrar has no criminal history (¶¶ 143-149). Overall, his history and characteristics are not troublesome, and apart from his conduct in this case, he has been law-abiding and productive. He has also complied with his pretrial release conditions.

### c. Cooperation Efforts

Defendant Sarrar entered into a cooperation plea agreement, and met with the government early in this prosecution. During a proffer session with the government, he was prepared, candid, and provided useful information. While his efforts fell short of providing substantial assistance, his timely cooperation with the government serves as another basis for our request for a downward variance.

### d. Nature of the Offense, Promoting Respect, Providing Just Punishment

The fraud in this particular case is not as serious as some fraudulent schemes. Individual consumers got a counterfeit item, but mostly are unaware that they purchased a counterfeit item of jewelry. These were well-made counterfeits, and defendants used high quality components in the manufacturing process. Consumers were still swindled, but not as significantly as often occurs in other fraudulent enterprises.

The loss falls mostly on Indian artisans and certain retail outfits, who lost business to the counterfeiters. How much was diverted from legitimate crafters is hard to measure, but it certainly is not insignificant. Overall, this type of fraud mostly spread minor damage to many, and more significant, immeasurable harm to only a few. That said, experts agree that the market for artisanal Native-American goods has suffered due to the influx of cheaper knock-offs imported from abroad.[1]

---

[1] *See* Maraya Cornell, *Biggest Native American Art Conspiracy Revealed*, NATIONAL GEOGRAPHIC, March 15, 2018 available at https://www.nationalgeographic.com/news/2018/03/native-american-indian-art-fake-forgery-hopi-zuni0/. "For as long as the Zunis and other indigenous artisans have sold their crafts, they've been undercut by fakes—nonnatives posing as Indians to sell more of their work, factory made goods sold as handmade. But today's fakes include a virtual torrent of knockoffs cheaply manufactured overseas and masquerading as genuine Native made . . . ."

### b. Defendant's History and Characteristics

Defendant Sarrar has no criminal history (¶¶ 143-149). Overall, his history and characteristics are not troublesome, and apart from his conduct in this case, he has been law-abiding and productive. He has also complied with his pretrial release conditions.

### c. Cooperation Efforts

Defendant Sarrar entered into a cooperation plea agreement, and met with the government early in this prosecution. During a proffer session with the government, he was prepared, candid, and provided useful information. While his efforts fell short of providing substantial assistance, his timely cooperation with the government serves as another basis for our request for a downward variance.

### d. Nature of the Offense, Promoting Respect, Providing Just Punishment

The fraud in this particular case is not as serious as some fraudulent schemes. Individual consumers got a counterfeit item, but mostly are unaware that they purchased a counterfeit item of jewelry. These were well-made counterfeits, and defendants used high quality components in the manufacturing process. Consumers were still swindled, but not as significantly as often occurs in other fraudulent enterprises.

The loss falls mostly on Indian artisans and certain retail outfits, who lost business to the counterfeiters. How much was diverted from legitimate crafters is hard to measure, but it certainly is not insignificant. Overall, this type of fraud mostly spread minor damage to many, and more significant, immeasurable harm to only a few. That said, experts agree that the market for artisanal Native-American goods has suffered due to the influx of cheaper knock-offs imported from abroad.[1]

---

[1] *See* Maraya Cornell, *Biggest Native American Art Conspiracy Revealed*, NATIONAL GEOGRAPHIC, March 15, 2018 available at https://www.nationalgeographic.com/news/2018/03/native-american-indian-art-fake-forgery-hopi-zuni0/. "For as long as the Zunis and other indigenous artisans have sold their crafts, they've been undercut by fakes—nonnatives posing as Indians to sell more of their work, factory made goods sold as handmade. But today's fakes include a virtual torrent of knockoffs cheaply manufactured overseas and masquerading as genuine Native made . . . ."

### e. Affording Adequate Deterrence and Protecting the Public

Deterrence is always important in fraud cases. It is thought that felony convictions in this case will deter others from doing similar frauds. The nature of what was done here does not warrant a term of imprisonment, especially in light of current events.

### f. Avoiding Unwarranted Sentence Disparities

There are few prosecutions of this nature in the federal system. Efforts are being put forth to prosecute more cases of this nature, but there are few cases thus far from which to compare what has been done in the past with what is being suggested here.

### g. The Need for Restitution

Defendant also should be ordered to pay $40,000 in restitution to victims in this case, specifically, the owners of a jewelry store in Scottsdale, Arizona, who were duped into believing that the conspirators' jewelry was Native-made. This amount represents the wholesale value of jewelry that was seized from the victim store in July 2018, in connection with the investigation of this case. Defendant is more likely than most to be able to find work to pay restitution. This is an additional factor to consider under § 3553(a)(7).

### h. A Fine is Warranted

It is recommended that a fine of $25,000 be imposed. The government would ask that the fine be directed to the Indian Arts and Crafts Board's ("IACB") Special Fund maintained at the U.S. Treasury. This was done in August 2020 in a New Mexico case, in

---

*See also* U.S. Government Accountability Office, (GAO-11-432), *Indian Arts and Crafts: Size of Market and Extent of Misrepresentation Are Unknown*, April 2011, at 1, *available at* https://www.gao.gov/assets/320/317826.pdf. "The sale of goods falsely represented as authentic Indian-produced arts and crafts has been a persistent and potentially growing problem in the United States. At least 1.9 million members of federally recognized Indian tribes live in the United States, some of whom are artisans who create pottery, baskets, rugs, and other types of arts and crafts for sale to wholesalers, retailers, or the public directly at Indian art shows and markets. Misrepresentation by sale of unauthentic products created by non-Indians, including imports from foreign countries, is a matter of great concern to Indian artisans, who may have to reduce their prices or lose sales because of competition from lower-priced imitation products. This could have a potentially significant negative economic effect on the Indian arts and crafts market and, consequently, on the individuals and tribes who rely on this market for income."

which a $300,000 fine was ordered to be paid in this fashion to the IACB.[2] The New Mexico case similarly involved defendants who imported jewelry in the Native American style from the Philippines and then misrepresented it to the public as Native-made jewelry. The same type of fine is appropriate here because Defendant Sarrar has been selling counterfeits for years, and the Native American community and Native artisans have been the most harmed by this criminal conduct.

**4.     Covid-19 Variance**

Defendant's guideline range is 12-18 months. Probation does not recommend incarceration. In light of the pandemic, the Defendant's lack of criminal history, and his cooperation in this matter, the government also believes that probation is appropriate. As the Court knows, many white collar offenders in BOP custody have been receiving early release to halfway houses to lessen the populations in the prison system. Many of those have served only half their sentences, and their original sentences were far more significant than what Defendant Sarrar is facing in this case. In addition, Compassionate Release motions have flooded the system for early release because of health concerns.

For this reason, the United States would ask the Court to vary downward and impose a non-custodial sentence.

**5.     Conclusion**

The United States requests that Mr. Sarrar be sentenced to 36 months of probation. He should be further ordered to pay $40,000 in restitution, a fine in the amount of $25,000 to be paid to the IACB of the U.S. Department of the Interior, and not engage in the manufacture or sale of items of jewelry during his term of probation.

Respectfully submitted this 14th day of September, 2020.

---

[2] *See* USAO District of New Mexico Press Release, "Purveyors of fraudulent Native American-style goods and products sentenced in federal court," August 27, 2020, *available at* https://www.justice.gov/usao-nm/pr/purveyors-fraudulent-native-american-style-goods-and-products-sentenced-federal-court.

MICHAEL BAILEY
United States Attorney
District of Arizona

*s/ Peter Sexton*
PETER SEXTON
Assistant U.S. Attorney

BRIAN C. RABBITT
Acting Assistant Attorney General
Criminal Division, U.S. Dept. of Justice

*s/ Mona Sahaf*
MONA SAHAF
Trial Attorney
Criminal Division, U.S. Dept. of Justice

# **CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Lee Stein
Attorney for Defendant Sarrar


*s/ Mona Sahaf*
Department of Justice, Criminal Division